IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARI LOUISE BRASWELL,

    Plaintiff,

      v.

BOARD OF REGENTS OF THE
UNIVERSITY SYSTEM OF
GEORGIA, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:04-CV-2583-TWT

OPINION AND ORDER

This is a civil rights action brought under 42 U.S.C. §§ 1983 and 1988.  The

Plaintiff asserts violations of her rights secured by the First and Fourteenth

Amendments to the United States Constitution.  It is before the Court on the Plaintiff's

Motion for a Temporary Restraining Order and/or Temporary Injunction [Doc. 4].

For the reasons set forth below, the Plaintiff's motion is DENIED.[1]

## I.  BACKGROUND

Plaintiff Marilou Braswell was employed by Defendant Board of Regents of the

University System of Georgia ("Board of Regents") as the coordinator of the

---

[1]The Court denied this motion in an oral ruling at the hearing on December 21, 2004.  This Order sets forth the Court's reasoning in denying the motion earlier.

University of Georgia cheerleading programs.  Defendant Michael F. Adams is the president of the University of Georgia and the chairman of the Board of the Defendant University of Georgia Athletic Association, Inc. (the "Athletic Association"). Defendant Frank Crumley is employed as senior associate athletic director.  Defendant Damon Evans was employed as an associate athletic director and is currently athletic director at the University.  The individual Defendants are agents and employees of Defendant Board of Regents.

Braswell alleges in her Complaint that she is a Christian and that as cheerleading coordinator she permitted and participated in team prayers.  She also alleges that her husband, an ordained Christian minister, conducted Bible study classes in their home that were attended by University of Georgia cheerleaders. In 2003, two Jewish cheerleaders complained to the athletic department that Braswell had discriminated against them based on their religion.  The two cheerleaders alleged that Braswell used her  position to encourage students to adopt certain religious practices and treated non-Christian cheerleaders unfavorably.

One of the Jewish cheerleaders pursued a formal complaint against Braswell. As a result of this complaint and the University's investigation of it, the University placed Braswell on disciplinary probation.  Defendant Evans sent a letter to Braswell dated November 23, 2003, outlining the terms of her probation.  The letter stated that:

> In addition, there are to be no more religious overtones in your program. This includes, but is not limited to the following: bible studies, prayers on the list serve, utilizing the name of religious figures which has the potential of eliminating persons of a different faith, etc. It should be noted that further violation of University Policy regarding religious discrimination will subject you to termination.

(Pl.'s Mot. T.R.O., Ex. 32.)  The University also accommodated the complaining student by giving her an extra year to cheer and placing her, without a tryout, on the football cheerleading squad.

Braswell vehemently objected to the University's handling of the complaint and the complaining cheerleader.  She asked for guidance from the University as to what to say concerning the accommodations made to the complaining cheerleader.  Her supervisor, Defendant Crumley, instructed her to say that the changes were made at the Athletic Association's directive.  On August 7, 2004, Braswell read a prepared statement to the entire cheerleading squad, including the complaining cheerleader.  It read, in its entirety as follows:

> On or about June, 2003, [NAME REDACTED] issued a complaint with the UGA Legal Affairs Department accusing me of religious discrimination against her.  It is my position that her accusations are totally without merit.  I have retained counsel to investigate the matter and prove my position.
> However, because the allegations were made, the UGA Athletic Department has mandated that [NAME REDACTED] be placed, without having to try out, on this squad.
> Because this is an ongoing investigation, I will have no further comment regarding this situation at this time, except to say this.  From this point

forward, we will act in a manner that is consistent with what is the "greater good" for this squad.  [NAME REDACTED] is a member of this team and is to be treated like any other member.  I will not tolerate any negative action, discussion or comments regarding [NAME REDACTED], as a result of this situation.  We will move on with the business of being the best cheer squad that we can be.

(Compl., Ex. A.)

As a result, on August 23, 2004, Defendant Crumley sent a letter to Braswell terminating her employment.  (Pl. Mot. TRO., Ex. 46.)  In the letter, he advised Braswell that her reading of her prepared statement had violated University policy. (Id.)  The letter further noted that based on a totality of the circumstances and complaints received by the University, Crumley no longer had confidence in Braswell's ability to exercise the judgment and leadership required of her position. (Id.)  Braswell appealed her termination to Defendant Evans, who affirmed Crumley's decision.

On September 2, 2004, Braswell filed this action, alleging four constitutional violations: (1) deprivation of free exercise of religion; (2) deprivation of freedom of speech; (3) deprivation of due process of law; and (4) deprivation of equal protection of the laws.  On October 14, Braswell moved for injunctive relief in the form of a temporary restraining order or a temporary injunction.  She requested that this Court order the Defendants to reinstate her as coordinator of the University's cheerleading

program.   Upon reinstatement, she requested that this Court prohibit further deprivation of her rights of freedom of religion and speech and bar enforcement of the University's nondiscrimination policy.  The Court heard oral argument on Braswell's motion for a temporary restraining order on December 21, 2004, and verbally denied the motion.

## II.  STANDARD FOR PRELIMINARY INJUNCTIVE RELIEF

"A preliminary injunction is an extraordinary and drastic remedy not to be granted until the movant clearly carries the burden of persuasion as to the four prerequisites."  Northeastern Florida Chapter of Ass'n of General Contractors of America v. City of Jacksonville, Florida, 896 F.2d 1283, 1285 (11th Cir. 1990).  In order to obtain a preliminary injunction, a movant must demonstrate that: "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest."  Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1097 (11th Cir. 2004) (citing Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (per curiam)).  The same standard applies to a request for a temporary restraining order.  Ingram v. Ault, 50 F.3d 898, 900 (11th Cir. 1995).

## III.  DISCUSSION

A.    Likelihood of Success on the Merits

Braswell asserts a claim against the Defendants for wrongful termination in violation of her rights under the First and Fourteenth Amendments.  She seeks, as her primary injunctive relief, reinstatement to her position with the University of Georgia.[2] In order to obtain the injunctive relief requested, Braswell must, as a preliminary matter, demonstrate a "substantial likelihood of success on the merits."  Klay, 376 F.3d at 1097.  Braswell does not tie her claim for wrongful termination to any specific constitutional right; rather, she appears to argue that each of the alleged constitutional violations contributed to her dismissal.  The Court will address each of the alleged constitutional violations and determine whether the Plaintiff's claim has a "substantial likelihood of success on the merits."

1.    Free Exercise of Religion

Braswell asserts a section 1983 claim against the Defendants, alleging that her termination was based upon, and thereby wrongfully infringed upon, her First

---

[2]Braswell also seeks a temporary restraining order and preliminary injunction barring the Defendants from infringing on her rights to freedom of speech and religion and barring enforcement of the University's nondiscrimination policy against her. These requests each contemplate her continued employment with the University and are of no value if she is not employed with the University.  Absent reinstatement, these requests are moot.

Amendment right to free exercise of religion.[3]  Specifically, she contends that the terms of her probation unduly restricted her free exercise of religion.  It is undisputed that Braswell engaged in activities -- such as leading team prayers -- that improperly injected religion into the cheerleading program.  After the Jewish cheerleader's complaint was investigated, Braswell was placed on twelve months' probation in November 2003.  The letter outlining the terms of her probation required that she eliminate religious overtones from the cheerleading program.  (Pl.'s Mot. T.R.O., Ex. 32).  The mandate to excise religion from her program "includes, but is not limited to the following: bible studies, prayers on the list serve, utilizing the name of religious figures which has the potential of eliminating persons of a different faith, etc."  (Id.) These specific restrictions, while implicating religious activity, do not bar or otherwise unduly constrain Braswell's free exercise of religion.  Read in context, they clearly

---

[3]In a wrongful termination action involving mixed motives, a plaintiff must show that the allegedly improper motive played a "substantial" part in the decision to terminate her. Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 285 (1977).  The burden on a plaintiff to show that the improper reason was a motivating factor is light.  Id.  Although the Defendants concede that Braswell's prepared statement was the proximate cause of her termination, and Braswell necessarily contends, for the purpose of her speech claim, that the statement played a "substantial part" in her firing, this Court will assume that the Plaintiff sufficiently alleges that her infusion of religion into the cheerleading program was also a motivating factor in her dismissal.

apply only to activities taken in the cheerleading program and not to her exercise of religion generally.

The Eleventh Circuit's decision in <u>Bishop v. Aronov</u>, 926 F.2d 1066 (11th Cir. 1991), provides guidance in addressing this claim.  In <u>Bishop</u>, the plaintiff university professor made repeated reference to his faith-based "bias" and held an after-class meeting to discuss the relationship between religion and biology.  The university sent the professor a memorandum barring his interjection of religious beliefs into class and required him to discontinue the optional after-class meetings.  The professor then filed suit, and the district court enjoined the defendants from restricting the professor's classroom  speech.  The Court of Appeals reversed.  It rejected his broad Free Exercise claim.  <u>Id.,</u> at 1077.  The plaintiff "made no true suggestion, much less demonstration, that any proscribed conduct of his impedes the practice of his religion."  <u>Id.</u>  The restrictions upon the plaintiff were not directed at his efforts to practice religion, but were directed at his interaction with his students.  <u>Id.</u>  The Court of Appeals concluded that "[t]hough the religion clauses are implicated because of the indisputably religious character of [the plaintiff's] remarks, the primary analysis that must be made here ascends from the cases that discuss the free speech rights of public teachers."  <u>Id.,</u> at 1072.  Although the restrictions imposed upon the plaintiff in <u>Bishop</u> constrained his introduction of religion into his university activities, the court

deemed these restrictions more properly viewed as constraints on his freedom of speech than constraints on his free exercise of religion. Id.

Here, as in Bishop, Braswell's personal religious practice was not restricted. Rather, the University, walking the First Amendment tightrope, sought to prevent her from injecting religious practice into her cheerleading program. The directives in the notice of probation neither caused her to do anything that compromised her religious beliefs nor prevented her from doing anything essential to her exercise of religion. Consequently, she fails to demonstrate a substantial likelihood of success on the merits of her free exercise claim.

2.      Freedom of Speech

Braswell also contends that her termination constituted unlawful retaliation for her exercise of her First Amendment right to freedom of speech. A state employer may not retaliate against a state employee for speech if the speech is protected under the First Amendment.[4] Rankin v. McPherson, 483 U.S. 378, 383 (1987); Stanley v.

---

[4]Braswell encourages application of Bishop to her free exercise claim. In particular, she relies on Bishop's distinction between in-class speech and extracurricular activities. Bishop, 926 F.2d at 1076. Although the holdings in Bishop may be relevant to Braswell's claim that the terms of her probation unduly restricted her freedom of speech, they are only indirectly relevant to her claim for wrongful termination. Her requested injunctive relief relies on her reinstatement, a remedy for her allegedly wrongful termination. Thus, her motion relies on the likelihood of success of her claim for wrongful termination.

City of Dalton, Ga., 219 F.3d 1280, 1288 (11th Cir. 2000).  The law also recognizes, however, that the state, as an employer, has an interest in regulating the speech of its employees.  Stanley, 219 F.3d at 1288.  In an effort to balance the competing interests of the public employee and the state, courts employ a four-step analysis to address First Amendment retaliation claims.  Connick v. Myers, 461 U.S. 138 (1983); Pickering v. Board of Ed. of Tp. High School Dist. 205, Will County, Illinois, 391 U.S. 563, 568 (1968); Stanley, 219 F.3d at 1288.  An employee must show by a preponderance of the evidence that: (1) her speech was on a matter of public concern; (2) her First Amendment interest in the speech outweighs "the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees," Pickering, 391 U.S. at 568; and (3) her speech played a "substantial part" in her termination.  Mt. Healthy City School Dist. Bd. of Educ., 429 U.S. at 285; Stanley, 219 F.3d at 1288.  If the employee succeeds in showing these three factors, the employer must prove that (4) it would have made the same decision absent the protected conduct.  Mt. Healthy City School Dist. Bd. of Educ., 429 U.S. at 287; Stanley, 219 F.3d at 1288.  The Defendants effectively concede that Braswell's prepared statement played a significant role in her termination and that it may not have made the same decision absent such conduct.  Thus, to succeed on her claim for wrongful termination in violation of her freedom of speech, Braswell must demonstrate

that her speech meets the first two prongs of the test and is consequently protected by the First Amendment.

As a threshold matter, <u>Pickering</u> and <u>Connick</u> require that the speech must be "fairly characterized as constituting speech on a matter of public concern." <u>Connick</u>, 461 U.S. at 146. The speech must relate to a matter of political, social, or other concern to the community. <u>Id.</u>; <u>Maggio v. Sipple</u>, 211 F.3d 1346, 1352 (11th Cir. 2000). This requirement is intended to distinguish a government employee's speech on matters of widespread concern from her speech regarding matters of her personal interest.

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

<u>Connick</u>, 461 U.S. at 147; <u>see</u> <u>also</u> <u>Stanley</u>, 219 F.3d at 1288 n.13 ("When there is a personal element to the speech, complaints of wrongdoing within a public agency may not constitute speech on a matter of public concern."). A court must make this determination by examining the content and the context of a given statement. <u>Connick</u>, 461 U.S. at 147-48; <u>Maggio</u>, 211 F.3d at 1352; <u>Morgan v. Ford</u>, 6 F.3d 750, 754 (11th Cir. 1993).

The specific speech at issue in this case is the prepared statement that Braswell read to her cheerleading squad on August 9, 2004.  (Compl., Ex. A.)  Braswell read the following statement in its entirety:

> On or about June, 2003, [NAME REDACTED] issued a complaint with the UGA Legal Affairs Department accusing me of religious discrimination against her.  It is my position that her accusations are totally without merit.  I have retained counsel to investigate the matter and prove my position.
>
> However, because the allegations were made, the UGA Athletic Department has mandated that [NAME REDACTED] be placed, without having to try out, on this squad.
>
> Because this is an ongoing investigation, I will have no further comment regarding this situation at this time, except to say this.  From this point forward, we will act in a manner that is consistent with what is the "greater good" for this squad.  [NAME REDACTED] is a member of this team and is to be treated like any other member.  I will not tolerate any negative action, discussion or comments regarding [NAME REDACTED], as a result of this situation.  We will move on with the business of being the best cheer squad that we can be.

(Id.)  Braswell contends that this statement, given the circumstances under which it was made, addressed a matter of public concern rather than private interest.  The content of the statement belies her contention.  The statement deals with Braswell, her relationship with her employer, and her denial of a student's complaint of discrimination.   She contends that the circumstances surrounding the statement reinforce that its purpose was not to advance her personal interest, but simply to explain the complaining cheerleader's status on the squad.  Again, the text and context

of the statement suggest otherwise.  This was not speech on a matter of public concern.

Even if the statement addressed a matter of public concern, the balancing test outlined in Pickering mandates the conclusion that it is not protected speech.  An employee must show that her First Amendment interest in making the speech at issue outweighs the state's interest in disciplining or firing an insubordinate employee. Pickering, 391 U.S. at 568; Stanley, 219 F.3d at 1288.  Braswell contends that the purpose of her statement was to put to rest rumors regarding the complaining cheerleader and to reinforce her status as an equal member of the team.  It is hard to see that revealing a student's complaint, denying the allegations therein, and contesting the manner in which she joined the team are acts of inclusion.  Crumley, in recommending Braswell's termination, suggested that this conduct was embarrassing for the student and set her apart from the other cheerleaders.  (Pl.'s Mot. T.R.O., Ex. 43.)  In his letter terminating Braswell, Crumley noted that the statement constituted impermissible retaliatory treatment of the complaining cheerleader.  (Id., Ex. 46.)  At the very least, the statement was "discourteous and disruptive behavior," as it isolated and estranged a single student.  (Id.)  The University concluded that Braswell's prepared statement unnecessarily harmed a student and, in doing so, harmed the state's interest in ensuring that programs at the University enrich student life.  Braswell

cannot demonstrate that her First Amendment interest outweighs this interest. Accordingly, she has not shown a substantial likelihood of success on the merits of her claim for wrongful termination in violation of her First Amendment right to freedom of speech.

### 3.    Equal Protection

Braswell also contends that University policies were applied to her in a discriminatory fashion, thereby violating the Equal Protection clause of the Fourteenth Amendment. She argues that she was punished and ultimately terminated for conduct substantially similar to that of other University employees who were not disciplined. To establish a prima facie case of disparate treatment, a plaintiff must show that: (1) she is a member of a protected class; (2) she faced an adverse employment action; (3) her employer treated similarly situated male employees more favorably; and (4) she was qualified to do the job. Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999); Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804 (1973). Effectively conceding the other three elements, the Defendants contend that Braswell cannot show that she was treated less favorably than similarly situated male employees. In order to satisfy the similarly situated prong, "the comparator's misconduct must be nearly identical to the plaintiff's in order 'to prevent courts from second-guessing employers' reasonable

decisions and confusing apples with oranges.'" Silvera v. Orange County School Bd., 244 F.3d 1253, 1259 (11th Cir. 2001) (quoting Maniccia, 171 F.3d at 1368-69).

Braswell alleges that the University's head football coach Mark Richt engaged in similar religious activities with students but faced neither reprimand nor probation for his conduct. Although she claims that she is similarly situated to Richt, important differences between the two are apparent. Braswell was the subject of student complaints of religious discrimination. Neither Richt nor any other program coordinator faced any similar student complaints. Braswell was on probation when she read a statement which her supervisors believed to violate University policy and federal law. Neither Richt nor any other program coordinator engaged in similar conduct. These are the actions for which Braswell has been disciplined, and as to these actions, she does not and cannot show a viable comparator. Without showing that a male employee was similarly situated and treated more favorably, Braswell fails to show a substantial likelihood of succeeding on the merits of her equal protection claim.

### 4.    Due Process

Braswell contends that she has constitutionally protected rights at stake and that the Defendants abridged these rights without due process. She alleges that she was disciplined and ultimately terminated pursuant to policies of which neither she, nor any

reasonable person, could have had notice.    Specifically, she maintains that the University's nondiscrimination policy is facially unconstitutionally vague.

An employee must have an identifiable property interest in her employment to prevail on a claim for denial of procedural due process.  Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972); Gray v. Board of Regents of University System of Georgia, 150 F.3d 1347, 1350 (11th Cir. 1998).  Under Georgia law, absent contractual or statutory exception, employment is terminable at will by either party.  Warren v. Crawford, 927 F.2d 559, 564 (11th Cir. 1991); see also O.C.G.A. § 34-7-1.  Braswell does not allege that any contractual or statutory exception applies to her employment.   At-will employees have no reasonable expectation in continued employment that would give rise to a property interest.  Wofford v. Glynn Brunswick Memorial Hosp., 864 F.2d 117, 119 (11th Cir. 1989).  Moreover, public employees generally have no property right in their employment.  Warren, 927 F.2d at 564 (citing Ogletree v. Chester, 682 F.2d 1366, 1369 (11th Cir. 1982); Barnes v. Mendonsa, 110 Ga. App. 464 (1964)).  Braswell fails to identify a property interest in her employment; consequently, the relief she requests may not be granted upon her procedural due

process claim.[5]    None of Braswell's claims for the relief requested are substantially likely to succeed on the merits.  Her request for temporary injunctive relief is denied.

### B.    Balance of Harms

The Court may order preliminary injunctive relief only when the threatened injury to the movant outweighs the damage that the proposed injunction may cause the opposing party.  Klay, 376 F.3d at 1097.  In this case, the record suggests that granting Braswell the relief she requests and reinstating her as coordinator of the University's cheerleading program would cause significant harm to the University.  Her prepared statement demonstrates the adversarial position she has taken vis-a-vis the University and its administration.  Her decision to read this statement indicates that she has permitted this vehement disagreement with the University to cloud her judgment and to permeate her relationship with the University's cheerleading programs.  Reinstatement of Braswell's employment would be disruptive to both the University's athletics programs and its administration.  Braswell fails to demonstrate that her

---

[5]Nor is Braswell likely to succeed on the merits of a substantive due process claim.    Braswell cannot and does not demonstrate that the University's nondiscrimination policy is facially vague.  Its language effectively mirrors that of Title VII.  Nor does Braswell show that the University's application of the policy is arbitrary or capricious.  She contends that the disparate application of this policy to University employees reveals its vagueness.  But, as discussed in the previous section, Braswell fails to identify any disparate treatment under the policy.  Thus, she is unlikely to succeed on the merits of a substantive due process claim.

hardship created by the temporary denial of reinstatement outweighs the harms to the Defendants that her reinstatement would cause.  Hence, the temporary injunctive relief Braswell requests is denied as unwarranted.

## IV.  CONCLUSION

For the reasons set forth above, the Plaintiff's Motion for a Temporary Restraining Order and/or Temporary Injunction [Doc. 4] is DENIED.

SO ORDERED, this 26th day of April, 2005.

> /s/ Thomas W. Thrash
> THOMAS W. THRASH, JR.
> United States District Judge